UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 21-14469-CIV-CANNON/McCabe

**BRADLEY MARTIN**, **et al.**,

    Plaintiffs,

v.

**WILLIAM D. SNYDER**, in his official capacity
as Sheriff, Martin County, Florida,
and **STEVEN O'LEARY**, individually,

    Defendants.
_____/

**ORDER ACCEPTING IN PART AND REJECTING IN PART
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [ECF No. 83]**

    **THIS CAUSE** comes before the Court upon Defendant Sheriff William D. Snyder's ("Defendant Sheriff") Motion for Summary Judgment (the "Motion") [ECF No. 65]. On July 28, 2023, Judge Ryon M. McCabe issued a report recommending that Defendant Sheriff's Motion be granted in part and denied in part (the "Report") [ECF No. 83]. Defendant Sheriff filed Objections to the Report [ECF No. 85]. The Court has reviewed the Report [ECF No. 83], Defendant Sheriff's Objections [ECF No. 85], and the full record.[1] Following review, the Report [ECF No. 83] is **ACCEPTED IN PART AND REJECTED IN PART** as set forth below.

---

[1] Plaintiffs neither filed objections to the Report nor responded to Defendant Sheriff's Objections, and the time to do so has expired [ECF No. 83 p. 28].

CASE NO. 21-14469-CIV-CANNON/McCabe

**FACTUAL BACKGROUND**[2]

This case stems from the arrest of thirteen Plaintiffs[3] by Defendant Steven O'Leary ("O'Leary"), former deputy sheriff at the Martin County Sheriff's Office ("MCSO"), on various occasions from August 7, 2018 to December 30, 2018.[4] As narrowed by the Report and Plaintiffs' non-objection, Plaintiffs pursue the following theory, in broad terms: O'Leary violated their federal and state civil rights by falsely arresting them using fabricated evidence, and Defendant Sheriff, in his official capacity, caused those violations by failing to train or otherwise supervise O'Leary. The material facts viewed in the light most favorable to Plaintiffs as the non-moving party are as follows:

MCSO hired O'Leary as a deputy sheriff on February 1, 2018 [ECF No. 67 ¶ 9]. Prior to being hired by MCSO, O'Leary worked with the Marion County Sheriff's Office (June 13, 2016–May 22, 2017) and the Town of Palm Beach Police Department (May 30, 2017–January 26, 2018) [ECF No. 67 ¶¶ 3, 5–6, 8]. In both positions, O'Leary made arrests for narcotics [ECF No. 67 ¶¶ 4, 7]. When O'Leary joined MCSO, he was assigned to a training unit before being placed in the Uniform Road Patrol Division after his training was

---

[2] These facts are drawn from the parties' Joint Statement of Undisputed Facts [ECF No. 67], Defendant Sheriff's Statement of Material Facts [ECF No. 66], Plaintiffs' Statement of Material Facts [ECF No. 76], Defendant Sheriff's Reply Statement of Facts [ECF No. 80] and supporting exhibits. Wherever there is a factual dispute, the Court construes the record in the light most favorable to Plaintiffs.

[3] The Court previously granted Defendant Sheriff's Unopposed Motion for Sanctions and dismissed Plaintiff Jabari Schweitzer's claims without prejudice when he failed to attend his deposition on two separate occasions, despite being warned by the Court that such a sanction may result [ECF No. 62; *see also* ECF No. 57].

[4] The Clerk of Court previously entered default against O'Leary for "failure to appear, answer, or otherwise plead to the complaint" within the time required by law [ECF No. 25]. Plaintiffs intend to move for entry of default judgment against O'Leary once Defendant Sheriff's liability has been resolved [ECF No. 27 p. 2].

completed [ECF No. 67 ¶¶ 10–12]. O'Leary worked the midnight shift for the Uniform Patrol Division and was supervised by Sergeant E. Brochu and Sergeant T. Baltes [ECF No. 67 ¶ 13].

Each of the Plaintiffs was arrested by O'Leary and charged with various drug-related crimes, though the charges were ultimately dropped by the State Attorney after the substances O'Leary claimed were controlled substances failed to test positive for any controlled substance [ECF No. 11 ¶¶ 49, 59, 69, 81, 104, 112, 121, 131, 141, 151, 162, 175, 188]. Below, the Court briefly summarizes the events surrounding each Plaintiff's interaction with O'Leary.

On August 7, 2018, O'Leary stopped Plaintiff Kyte's vehicle "based on an allegation of improper display of license plate and an odor of burning cannabis" [ECF No. 67 ¶ 15]. O'Leary approached the vehicle and "claimed to smell marijuana and that Kyte made an excited utterance admitting to the crime" [ECF No. 67 ¶ 16]. O'Leary then searched the vehicle and "claimed to find marijuana inside an open container located in the center console" [ECF No. 67 ¶¶ 17–18]. O'Leary then claimed that the substance tested positive for THC and arrested Kyte for possession of marijuana and tampering with evidence [ECF No. 67 ¶¶ 19–20].

O'Leary similarly conducted a traffic stop of Plaintiff Palmeri on September 13, 2018 [ECF No. 67 ¶ 22]. O'Leary said that he stopped Palmeri for having an illegal window tint and asked to search the vehicle, noting that the surrounding area had experienced several break-ins [ECF No. 67 ¶¶ 22–23]. O'Leary then conducted a search of the vehicle during which he claimed to "find a white powdery substance in a clear plastic bag" [ECF No. 67 ¶ 24]. After O'Leary claimed the substance tested positive for cocaine through a field-testing kit, he arrested Palmeri for possession of a controlled substance [ECF No. 67 ¶¶ 25–26].

Plaintiff Perez was stopped by O'Leary on September 18, 2018, after he allegedly failed to stop at a stop sign [ECF No. 67 ¶ 28]. O'Leary approached the vehicle and "claimed to observe [Perez] sweating profusely and being so nervous he was shaking" [ECF No. 67 ¶ 29]. O'Leary

asked Deputy Albauer of the K-9 unit to walk the K-9 around the vehicle, during which the K-9 "allegedly alerted to narcotics" [ECF No. 67 ¶ 30]. According to O'Leary, during the stop, Perez emptied his pockets and "had a lipstick container which had a white substance and a small cut piece of cloth inside" [ECF No. 67 ¶ 31]. A field test of the substance by O'Leary allegedly revealed that the substance tested positive for cocaine, leading O'Leary to arrest Perez for possession of a controlled substance and possession of drug paraphernalia [ECF No. 67 ¶¶ 32–33].

A month later, on October 18, 2018, O'Leary approached Plaintiff Saunders in a parked vehicle because O'Leary "thought the vehicle was being burglarized" [ECF No. 67 ¶ 35]. O'Leary claimed to "smell the odor of burnt cannabis and observe[] two syringes in plain view in the center cup holder of the vehicle" [ECF No. 67 ¶ 36]. O'Leary searched the vehicle and "claimed to find THC oil, an off-white powder substance on the front floorboard, two glass pipes with burnt residue in a backpack in the backseat of the vehicle, white rocks in the back seat, and syringes" [ECF No. 67 ¶¶ 37–38]. After conducting a field test of the substances, O'Leary claimed that "the off-white powder substance tested positive for Fentanyl and that the white rocks tested positive for cocaine" [ECF No. 67 ¶ 39]. O'Leary arrested Saunders for three counts of possession of a controlled substance (THC oil, cocaine, and heroin) and two counts of possession of drug paraphernalia [ECF No. 67 ¶ 40].

O'Leary stopped Plaintiff Martin on October 20, 2018, because of an allegedly expired registration [ECF No. 67 ¶ 42]. On approaching the vehicle, O'Leary "claimed to smell a strong odor of burnt cannabis" [ECF No. 67 ¶ 43]. After searching the vehicle, O'Leary "found a plastic bag that was labeled laundry detergent," which contained a "white and light blue substance" [ECF No. 67 ¶ 45]. O'Leary claimed the substance tested positive for cocaine and Fentanyl through a field-testing kit and arrested Martin for trafficking in heroin [ECF No. 67 ¶¶ 46–47].

On October 23, 2018, O'Leary approached Plaintiff Veltre because Veltre was "standing next to a closed business" [ECF No. 67 ¶ 49]. O'Leary "claimed to notice an orange straw in the second fold of [Veltre's] wallet" and "requested to search Veltre's person and property" [ECF No. 67 ¶ 50]. That search allegedly revealed "a white powdery substance in Veltre's wallet," which O'Leary claimed tested positive for cocaine [ECF No. 67 ¶¶ 51–52]. According to O'Leary, Veltre also had "marijuana in his sock that also field tested positive for THC" [ECF No. 67 ¶ 52]. O'Leary further claimed that "he found 97 grams of another white powder-like substance in an ice cream container in Veltre's bag" that tested positive for Oxycodone [ECF No. 67 ¶ 53]. Veltre was arrested for two counts of possession of a controlled substance (cocaine and oxycodone), possession of cannabis, and possession of drug paraphernalia [ECF No. 67 ¶ 54].

Plaintiff Morales was riding her bicycle on October 24, 2018, when O'Leary stopped her "based on an allegation of no lights on the bicycle" [ECF No. 67 ¶ 56]. During the stop, O'Leary asked to search Morales' purse and "claimed to find white rock like substances which O'Leary claimed field tested positive for methamphetamine" [ECF No. 67 ¶¶ 57–58]. Morales was taken to the jail for booking where O'Leary claimed "another white substance fell out of her pant leg" that similarly tested positive for methamphetamine [ECF No. 67 ¶ 59]. Morales was ultimately arrested for possession of a controlled substance (methamphetamine) and introduction of contraband into a correctional facility [ECF No. 67 ¶ 60].

Plaintiff Felts was similarly traveling on his bicycle on October 26, 2018, when O'Leary stopped him, alleging that he had no lights on the bicycle [ECF No. 67 ¶ 62]. O'Leary approached Felts and claimed that he received permission to search Felts' backpack [ECF No. 67 ¶ 63]. Upon searching the backpack, O'Leary "claimed to find a pill bottle with numerous papers that contained a white crystal-like substance" that field-tested positive for MDMA [ECF No. 67 ¶¶ 64–65].

O'Leary arrested Felts for trafficking in MDMA, possession of hasish, and introduction of contraband into a detention facility [ECF No. 67 ¶ 66].

On November 14, 2018, Plaintiff Sutton was arrested by O'Leary based upon allegations that he was disturbing the peace [ECF No. 67 ¶ 68]. Once they arrived at the jail, O'Leary "claimed to notice a white rock on the back floorboard of his vehicle" [ECF No. 67 ¶ 69]. A field test of the substance allegedly revealed that it tested positive for cocaine [ECF No. 67 ¶ 70]. O'Leary then arrested Sutton for resisting with violence, possession of a controlled substance, introduction of contraband into a detention facility, and disorderly conduct [ECF No. 67 ¶ 71].

Plaintiff Crull was sleeping in his vehicle on December 5, 2018, when O'Leary approached because it was an allegedly "suspicious vehicle" [ECF No. 67 ¶ 73]. O'Leary claimed to "observe an open container, paraphernalia and a green leafy substance in plain view" [ECF No. 67 ¶ 74]. Upon a search of the vehicle, O'Leary "claimed to find a white substance in the driver side door" [ECF No. 67 ¶ 75]. He claimed that the "green leafy" substance tested positive for THC and the "white powder" tested positive for heroin [ECF No. 67 ¶ 76]. O'Leary arrested Crull for trafficking in heroin, possession of marijuana, and paraphernalia [ECF No. 67 ¶ 77].

On December 9, 2018, Plaintiffs Hogan and Callahan were camping at Dupois Management Area in southern Martin County along with their co-worker, Hailey Green [ECF No. 67 ¶ 79]. Around midnight, O'Leary arrived at the campsite and claimed that a neighboring camper had "complained about being threatened by a male and there was a loud noise from a suspicious vehicle" [ECF No. 67 ¶ 80]. O'Leary said that Hogan refused to produce identification while O'Leary was conducting what O'Leary described as a "lawful investigation concerning the verbal threats and violation of Martin County noise ordinance" [ECF No. 67 ¶ 81; ECF No. 67-10 (O'Leary's arrest affidavit)]. Hogan was then transported to the jail where O'Leary claimed to find "a plastic container with an off-white substance that O'Leary claimed tested

positive for heroin" in the back of the patrol car where Hogan had been located [ECF No. 67 ¶ 82]. Hogan was arrested for possession of a controlled substance (heroin), possession of drug paraphernalia, and resisting/obstructing [ECF No. 67 ¶ 83]. Callahan was also arrested for possession of a controlled substance (THC oil), possession of marijuana (less than 20 grams), and paraphernalia after O'Leary claimed he found "THC Oil, Cannabis and Drug Paraphernalia in [her] possession" [ECF No. 67 ¶ 84; ECF No. 67-11 (O'Leary's incident report)].

Finally, Plaintiff Schmier was pulled over by O'Leary on December 30, 2018, based on an allegation of "an illegal window tint and improper turn" [ECF No. 67 ¶ 87]. O'Leary "claimed to small the 'faint' odor of cannabis" when he approached the vehicle [ECF No. 67 ¶ 88]. During a search of Schmier's vehicle, O'Leary claimed "to find 'shake' on the floorboard of the vehicle and a loose pill in Schmier's purse" [ECF No. 67 ¶ 89]. According to O'Leary, the "shake" was positive for THC, and the pill was positive for Oxycodone following a field test [ECF No. 67 ¶ 90]. O'Leary arrested Schmier for possession of a controlled substance [ECF No. 67 ¶ 91].

On January 10, 2019, the State Attorney's office for the Nineteenth Judicial Circuit of Florida alerted MCSO that the Indian River Crime Lab reported three separate items of narcotics that failed to test positive for the listed controlled substances—all of which had been submitted by O'Leary [ECF No. 67 ¶ 93]. This information caused Sheriff's Major Robert Seaman to order an internal administrative review of O'Leary's pending drug cases [ECF No. 67 ¶ 95].[5] The next day, O'Leary was placed on administrative leave with pay; he was eventually terminated by MCSO on January 14, 2019 [ECF No. 67 ¶¶ 98–99].

When the Indian River Crime Laboratory tested the substances submitted by O'Leary from the arrests of seven Plaintiffs, the results showed no controlled substances at all [ECF No. 67

---

[5] The parties' Joint Statement of Undisputed Facts does not contain a paragraph 94 [ECF No. 67 p. 10].

¶102].[6] Of the 79 total drug-related arrests made by O'Leary during his time at MCSO, 15 of those arrests were determined upon testing not to involve controlled substances [ECF No. 67 ¶ 101].

O'Leary was charged by information, in Florida state court, with 18 counts of official misconduct; nine counts of false official statement; eight counts of tampering with evidence; 13 counts of false imprisonment; one count of second-degree petit theft; and one count of battery, several of which related to O'Leary's interactions with some of the Plaintiffs [ECF No. 67 ¶¶ 108–09; *State of Florida v. Steven O'Leary*, Case No. 2019CF000872; ECF No. 11 pp. 91–98].[7] On December 2, 2021, O'Leary pled no contendere and was adjudicated guilty on all 50 counts [ECF No. 67 ¶ 110]. O'Leary's current release date is May 10, 2032 [ECF No. 67 ¶ 112].

## RELEVANT PROCEDURAL HISTORY

On January 26, 2022, Plaintiffs filed a nine-count Amended Complaint ("FAC") [ECF No. 11]. As relevant here, the FAC asserts that Defendant Sheriff is (1) liable under 42 U.S.C. § 1983 in his official capacity because MCSO's "policies, customs, and practices" and its failure to adequately train/supervise O'Leary resulted in violations of Plaintiffs' federal civil rights [ECF No. 11 ¶¶ 197–210] (Count II); and (2) Defendant Sheriff, as O'Leary's employer, "is responsible for O'Leary's acts" and is liable for Plaintiffs' false arrest and imprisonment under Florida state law [ECF No. 11 ¶¶ 211–16] (Count III).[8] Plaintiffs seek compensatory and punitive damages on their Section 1983 claim and compensatory damages on their state law claim [ECF No. 11 pp. 31–32].

---

[6] The relevant Plaintiffs are as follows: Plaintiffs Kyte, Palmeri, Martin, Morales, Felts, Sutton, and Schmier [ECF No. 67 ¶ 102].

[7] O'Leary's criminal charges relate to his interactions with Plaintiffs Kyte, Martin, Felts, Sutton, Schmier, and Palmeri [ECF No. 67 ¶ 109].

[8] The remaining Counts (Counts I and IV–IX) are lodged against Defendant O'Leary [ECF No. 11 ¶¶ 190–96, 217–54].

On June 15, 2023, Defendant Sheriff moved for summary judgment on both counts against him (Counts II and III) [ECF No. 65]. The Court referred the Motion to Magistrate Judge McCabe for a Report and Recommendation [ECF No. 68]. The Report is ripe for adjudication [ECF Nos. 83, 85].

## LEGAL STANDARD

To challenge the findings and recommendations of a magistrate judge, a party must file specific written objections identifying the portions of the proposed findings and recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(3); *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989); *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). A district court reviews de novo those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1). To the extent a party fails to object to parts of the magistrate judge's report, the Court may accept the recommendation so long as there is no clear error on the face of the record. *Macort*, 208 F. App'x at 784. Legal conclusions are reviewed de novo, even in the absence of an objection. *See LeCroy v. McNeil*, 397 F. App'x 554, 556 (11th Cir. 2010); *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994).

## DISCUSSION

The Report recommends that the Court grant Defendant Sheriff's Motion for Summary Judgment in part and allow the Section 1983 claim to proceed to trial only insofar as it is brought under a "failure to train or supervise" theory of liability [ECF No. 83 p. 28]. The Report also recommends that the Court grant the Motion with regard to Plaintiffs' requests for punitive damages on their Section 1983 claim, because the law does not permit recovery of punitive damages in Section 1983 actions against a municipal entity [ECF No. 83 p. 27]. With regard to the state law claim asserted by Plaintiffs, the Report recommends granting Defendant Sheriff's

Motion as it relates to the Plaintiffs involved in the charges filed against O'Leary and denying it as to the remaining Plaintiffs [ECF No. 83 p. 28].  The Report concludes that, as to the Plaintiffs associated with O'Leary's eventual criminal charges (i.e., Plaintiffs Kyte, Martin, Felts, Sutton, Schmier, Morales, and Palmeri), the undisputed evidence is such that "no reasonable jury could reach any conclusion except that [O'Leary] committed his offenses [against those Plaintiffs] 'in bad faith,'" thus entitling Defendant Sheriff to sovereign immunity under Fla. Stat. § 768.28(9)(a) [ECF No. 83 pp. 26–27].  The Report finds, however, that because "the State never charged any criminal conduct with reference to [the remaining] Plaintiffs" and O'Leary never "entered any plea with respect to these Plaintiffs, genuine issues of fact remain as to application of the sovereign immunity statute"—making it so those Plaintiffs should be permitted to pursue their state law claim at trial [ECF No. 83 p. 27].

The Court first addresses the merits of Plaintiffs' Section 1983 claim in light of the Report's recommendation and then turns to issues related to the state law claim.

On the merits of Plaintiffs' Section 1983 claim against Defendant Sheriff, the Report recommends that the Court grant summary judgment in favor of Defendant Sheriff to the extent Plaintiffs are seeking to recover under a "custom or practice" theory of recovery [ECF No. 83 pp. 11–13].  Specifically, the Report determines, based on the undisputed facts, that Defendant Sheriff's "employees did not engage in a widespread pattern of making arrests without probable cause, fabricating evidence, or making false statements in police records," and thus, that no genuine dispute of material fact exists to warrant a trial on Plaintiffs' "custom or practice" theory of recovery [ECF No. 83 p. 12].  However, the Report finds a triable issue precluding summary judgment on Plaintiffs' "failure to train or supervise" theory of liability under Section 1983 [ECF No. 83 pp. 13–24].  In particular, the Report finds a genuine fact issue as to whether Defendant Sheriff had notice of O'Leary's wrongdoing, citing abnormalities in evidence seized by

CASE NO. 21-14469-CIV-CANNON/McCabe

O'Leary, specified failures in policy related to such seized evidence, and knowledge by MCSO supervisors about O'Leary's unusually high number of narcotic arrests [ECF No. 83 pp. 15–23]. The Report concludes that a reasonable jury could "conclude that [Deputy Sheriff's failure to train and/or supervise O'Leary] caused the constitutional violations committed against the Plaintiffs" [ECF No. 83 p. 23]. As such, the Report recommends that the Court deny summary judgment to Defendant Sheriff on the Section 1983 claim (Count II) and allow Plaintiffs to proceed to trial on their "failure to train or supervise" theory of liability [ECF No. 83 p. 28].

Defendant Sheriff's objection with regard to the Section 1983 claim is limited to the Report's determination that a genuine issue of material fact exists on Plaintiffs' "failure to train or supervise" theory of liability [ECF No. 85 p. 1]. According to Defendant Sheriff, the Report "does not adequately test the causal link between each of the Plaintiff's injuries and the Sheriff's conduct" under the "extraordinarily difficult burden of proof" attendant to such a claim [ECF No. 85 p. 3]. Defendant Sheriff also takes issue with the Report's decision to draw an inference that O'Leary's supervisors had become suspicious prior to Plaintiffs' arrests, arguing that this inference is "not a reasonable one" given that O'Leary did not start making a high number of drug arrests until October 2018 [ECF No. 85 pp. 3–4]. Defendant Sheriff further argues that (1) Defendant Sheriff could not have been on notice at the time Plaintiffs were arrested because "the first three drug submissions to come back from the lab with negative test results" were not returned until "late December or early January of 2019" [ECF No. 85 p. 6]; and (2) Plaintiffs have not produced any evidence that Defendant Sheriff should have known that O'Leary's supervisors might not have been following policy in verifying that O'Leary's evidence submissions were accurate [ECF No. 85 p. 8]. According to Defendant Sheriff, because no complaints were received about O'Leary's behavior until January 2019, that date is the earliest date on which Defendant

11

Sheriff could have been on notice for purposes of Section 1983 liability, and therefore, summary judgment on the Section 1983 claim is appropriate [ECF No. 85 p. 9].[9]

Defendant Sheriff's objections are reasonable but ultimately do not persuade the Court in light of the Report's careful consideration of the record evidence, the ample evidence submitted by the parties on the Motion, and the summary judgment standard itself. Defendant Sheriff criticizes the Report for failing to "examine each the dates of each of the Plaintiffs' arrests to determine if there is sufficient evidence **as to the date of each and every one of those arrests** to create a genuine issue of material fact" [ECF No. 85 p. 3 (emphasis in original)]. However, the Report correctly notes that "Plaintiffs cannot rely upon evidence that post-dates their respective arrests to show notice" [ECF No. 83 p. 15] and then proceeds to carefully review the record evidence finding that it demonstrates "supervisory knowledge of the unusually high number of narcotics arrests made by [O'Leary], and . . . obvious abnormalities with evidence seized by [O'Leary] prior to Plaintiffs' arrests" [ECF No. 83 pp. 15–16].[10] In doing so, the Report notes the dates on which these evidence abnormalities arose, at least some of which predated Plaintiffs' arrests [ECF No. 83 pp. 17–21]. And then the Report concludes, based on the record and reasonable inferences to be drawn therefrom, that the decision whether those abnormalities were sufficient to place Defendant Sheriff on notice prior to Plaintiffs' arrests is a question for the jury to decide [ECF No. 83 p. 23]. The Court agrees. As further evidence of the remaining dispute of material fact, the Report notes that O'Leary's supervisors had become suspicious of his high number of narcotics arrests prior to Plaintiffs' arrests [ECF No. 83 p. 16]. Because the record is

---

[9] Plaintiffs did not file a response to Defendant Sheriff's Objections and the time to do so has expired. *See* Fed. R. Civ. P. 72(b)(2).

[10] The Report notes that while "neither category of evidence would be sufficient to create a jury issue on its own in this case . . . in combination they suffice." [ECF No. 83 p. 16].

"unclear as to the timing of the[] suspicions by various supervisors," the Report correctly resolves those ambiguities in favor of Plaintiffs (the non-moving party) [ECF No. 83 p. 16]. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

Defendant Sheriff's argument that January 2019 was the earliest date that notice could have been established is also not persuasive under the weight of the summary judgment standard. The record evidence, as analyzed by the Report, shows not only that MCSO supervisors were aware that O'Leary had an unusually high number of narcotics arrests, but also that the supervisors repeatedly signed off on O'Leary's evidence collections despite clear abnormalities, including evidence that did not match the description provided by O'Leary [ECF No. 83 pp. 17–21]. Taken as a whole, although the issue is close, the Court agrees with the Report that the record evidence establishes a genuine dispute of material fact as to whether Defendant Sheriff was on notice of O'Leary's constitutional violations prior to Plaintiffs' arrests [ECF No. 83 p. 23]. Nor does the Court agree with Defendant Sheriff's suggestion that the Report failed to adequately test the causation element attendant to a failure to train/supervise theory of liability [ECF No. 85 p. 3]. The Report considered the appropriate legal standards; properly found a genuine factual dispute as to whether Defendant Sheriff had notice of O'Leary's constitutional violations before Plaintiffs' arrests; and also determined correctly that a reasonable jury could conclude that Defendant Sheriff's failure to train or supervise O'Leary caused the constitutional violations committed against Plaintiffs [ECF No. 83 p. 24]. Though Defendant Sheriff objects that the burden on Plaintiffs is "extraordinarily difficult" under a "failure to train or supervise" theory of liability [ECF No. 85 p. 3], the Report recognized that rigorous standard and applied it properly in the context of summary judgment [ECF No. 83 p. 14 (citing *City of Canton v. Harris*, 489 U.S. 378, 379 (1989))]. In sum, having considered Defendant Sheriff's objections with regard to Plaintiffs' Section 1983 claim, the Court agrees with the Report on this record that a genuine dispute of

material fact precludes summary judgment on Plaintiffs' "failure to train or supervise" theory of liability.

Turning to the Report's conclusion that Defendant Sheriff is entitled to summary judgment on Plaintiffs' state law claim (Count III) only insofar as it relates to the Plaintiffs named in the criminal charges filed against O'Leary [ECF No. 83 pp. 26–27], the Court respectfully disagrees.

Section 768.28(9)(a) provides that a governmental employer is generally responsible for the torts of employees acting within the scope of their employment, unless that employee "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). "For conduct to be willful and wanton, it must be shown that the defendant knew, or reasonably should have known in light of the surrounding circumstances, that his conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences." *Gregory v. Miami-Dade Cnty.*, 86 F. Supp. 3d 1340, 1343 (S.D. Fla. 2015), *aff'd sub nom. Gregory v. Miami-Dade Cnty., Fla.*, 719 F. App'x 859 (11th Cir. 2017) (internal quotation marks omitted); *see also Coleman v. Hillsborough Cnty.,* 41 F.4th 1319, 1325 (11th Cir. 2022) ("Wanton means with a conscious and intentional indifference to consequences and with the knowledge that damage is likely to be done to persons or property." (internal quotation marks omitted)).

The Report concludes that the requisite bad faith was shown as to the Plaintiffs associated with O'Leary's criminal charges (and ultimate adjudication of guilt), but that a genuine dispute of material fact remains as to the other Plaintiffs [ECF No. 83 pp. 26–27]. Defendant Sheriff objects that "regardless of whether O'Leary was actually *convicted* of his actions in regard to [the remaining Plaintiffs], no reasonable juror could conclude that those actions were anything other

14

than committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, and property" [ECF No. 85 pp. 10–11].[11]

On this summary judgment record, the Court agrees with Defendant Sheriff. The undisputed facts show a pattern of behavior by O'Leary wherein he repeatedly stopped individuals, conducted a search of their vehicle and/or person by making tenuous claims as to probable cause, claimed to find items on their person that resembled controlled substances, and then arrested them for possession of those items after a field test allegedly revealed the items to be controlled substances [*See* ECF No. 67 ¶¶ 15–92]. Though the state ultimately did not charge O'Leary with crimes related to his interactions with the remaining six Plaintiffs, according to the undisputed facts, those remaining Plaintiffs were subjected to the same pattern of behavior by O'Leary as those involved in the criminal charges that were ultimately filed. Accordingly, considering the totality of the circumstances as Plaintiffs suggest, and accepting their version of the facts as true, O'Leary knew or reasonably should have known that his falsification of evidence naturally or probably would result in the deprivation of Plaintiffs' constitutional rights, yet disregarded those consequences. *See Adkins v. Edenfield,* No. 18-CV-271, 2022 WL 20508217 (N.D. Fla. Sept. 22, 2022) ("If [the deputy sheriff] is found to have planted evidence, which necessarily constitutes bad faith and willful disregard of [plaintiff's] rights, the Sheriff is not liable."). He thus acted "in a manner exhibiting wanton and willful disregard of human rights, safety, or property"—entitling Defendant Sheriff to sovereign immunity pursuant to Fla. Stat. § 768.28(9)(a). The distinction that some Plaintiffs were not named in the state's Information charging O'Leary with various crimes does not dictate a different result here. Summary judgment in favor of Defendant Sheriff is appropriate on Plaintiffs' state law claim (Count III).

---

[11] Plaintiffs did not object to the Report's recommendation that the Court grant summary judgment in favor of Defendant Sheriff on the state law claim as it relates to Plaintiffs Kyte, Martin, Felts, Sutton, Schmier, Morales, and Palmeri, and the time to do so has elapsed [ECF No. 83 p. 28].

CASE NO. 21-14469-CIV-CANNON/McCabe

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Report and Recommendation [ECF No. 83] is **ACCEPTED IN PART AND REJECTED IN PART** as set forth above.

2. Defendant Sheriff William D. Snyder's Motion for Summary Judgment [ECF No. 65] is **GRANTED IN PART AND DENIED IN PART** as follows:

    a. Defendant Sheriff's Motion for Summary Judgment is **GRANTED** as to Count II to the extent that Plaintiffs pursue their Section 1983 claim under an "official policy" or "custom or practice" theory.

    b. Defendant Sheriff's Motion for Summary Judgment is **DENIED** as to Count II to the extent that Plaintiffs pursue their Section 1983 claim under a "failure to train or supervise" theory. Plaintiffs may proceed to trial on Count II under a "failure to train or supervise" theory.

    c. Defendant Sheriff's Motion for Summary Judgment is **GRANTED** as to Count III.

    d. Defendant Sheriff's Motion for Summary Judgment is **GRANTED** as to Plaintiffs' request for punitive damages.

3. Trial is scheduled for the two-week trial period beginning **January 16, 2024** [ECF No. 106].

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida this 10th day of October 2023.

AILEEN M. CANNON
UNITED STATES DISTRICT JUDGE

cc: counsel of record